UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROGER PENMAN, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Civil No. 06-113-B-W |
| ) | |
| STEVEN BERRY, WARDEN, ) | |
| CHARLESTON CORRECTIONAL ) | |
| FACILITY, ) | |
| ) | |
| Respondent ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Roger Penman, who was convicted after a jury-waived trial of one count of aggravated assault and one count of terrorizing, has filed a 28 U.S.C. § 2254 petition, principally focused on the prosecution's proof apropos the aggravated aspect of the assault. The State of Maine, on behalf of Steve Berry, Warden at the Charleston Correctional Facility, has filed a motion to dismiss the petition. (Docket No. 4.) For the reasons below, I recommend that the Court grant the State's motion and deny Penman's § 2254 petition, because three of his claims were never properly exhausted in the state court and the fourth ground loses on the merits.

*Discussion*

Briefly, Roger Penman was convicted of aggravated assault and terrorizing of Freeman Peaslee. Penman does not dispute that he went to Peaslee's residence – a camp near Saponac Lake in Burlington, Maine -- the evening of August 13, 2003. The State prosecuted Penman for aggravated assault on the theory that Penman used a knife in the

course of the assault, stabbing Peaslee in his side. Penman maintains that he went to Peaslee's camp to make sure a third-party cum trial witness, Anthony Hayman, did not get into 'trouble' with Peaslee. Penman asserts that, although he did scuffle with Peaslee, he had no knife and the injury to Peaslee's side occurred when Peaslee fell against some sheet metal in the rear of Penman's nearby truck. A knife was never recovered, there was no testimony that Penman even owned a knife, and the only other eyewitness to the encounter, Anthony Hayman, testified that he never actually saw a knife.

In his 28 U.S.C. § 2254 petition Penman presses four grounds for federal relief from his state court conviction. First, he asserts that he was deprived of due process and denied a fair trial when the State withheld exculpatory material. Second, he contends that the trial judge viewed false and prejudicial testimony in a light most favorable to the State in violation of his due process rights. Third, he complains that the prosecutor impermissibly vouched for the State's witness and coerced his testimony eliciting false statements regarding non-existent injury to the victim's ribs. And, fourth, Penman believes that there was insufficient evidence to support his conviction.

I take the fourth ground first because the State concedes that it is fully primed for this Court's 28 U.S.C. § 2254 review having been addressed on direct appeal by the Maine Law Court. As to the other three grounds, the State argues that they are procedurally defaulted because they were not presented to the State courts through to the final level of review.

*Insufficiency of the Evidence Claim*

In his direct appeal brief to the Maine Law Court Penman pressed one ground: "The trial judge erred in finding that sufficient evidence had been presented which proved

2

beyond a reasonable doubt that the Defendant was guilty of aggravated assault as defined by 17-A M.R.S.A. Section 208(1)(B) and terrorizing as defined by 17-A M.R.S.A. Section 210." (Br. Appellant at 6-7, State Ct. R. B.)

Prefacing his argument with citations to Maine Statutes and Maine Law Court cases, Penman's insufficiency of the evidence argument in his direct appeal – incorporated and revived in his 28 U.S.C. § 2254 petition -- was as follows:

> The evidence presented in this case, when considered in its totality, is insufficient to prove beyond a reasonable doubt all the elements of the charged offense. Unlike the 'discrepancies relating to incidental matters' the Court found in State v. Lawless, 387 A.2d 30 (Me. 1978), the discrepancies in testimony here relate to substantial matters. For example, the Defendant supposedly used a knife to attack Mr. Peaslee yet no knife was ever found; no one ever recalled seeing the Defendant with such a weapon. (H.t.p. 54, 56, 82[.]) In fact, he stated in his testimony that [he] did not own a knife. (H.T. 183) The physician's assistant who examined Mr. Peaslee's wounds testified that it could have come from something other than a knife. (H.T. p. 66) With no direct evidence presented during trial showing the existence of the 'dangerous weapon' required to prove guilt under 17-A Section 208(1)(B), the State clearly failed to meet its burden of proof beyond a reasonable doubt on this element. It may have been the case that the State recognized that Mr. Peaslee's injury was not substantial enough to fit under the 'serious bodily harm' requirement under 17-A Section 208(1)(A) so they sought to go after the defendant on the dangerous weapon theory even though they could not produce the supposed weapon.
> 
> During his testimony the Defendant put forward an alternative explanation for the wound when he explained that during an exchange of words the two men had, Mr. Peaslee may have come in contact with a slab of sheet me[t]al sticking out of the truck. (H.T. p. 138) The only other eye witness to the encounter, Anthony Hayman, one of the State's own witnesses, told state trooper Fiske immediately following the incident that he did not know that Peaslee had been stabbed. (H.T. p. 55).
> 
> As the Court stated in State v. Poulin, 697 A.2d 1276, 1280 (Me. 1997), when evaluating the validity of alternative possibilities, 'the question is whether such an alternative is sufficiently credible in light of the entire record that i[t] necessarily raises a reasonable doubt.' As noted above the physician's assistant testified that the injury could have come []not just from a knife but also from another sharp metal object. (H.T. p. 60) The possibility that the wound came from Mr. Peaslee making contact

3

with the sheet metal appears to be plausible and at least sufficient to raise a reasonable doubt.

It is also important to note that the record is filled with much contradictory, uncoordinated testimony.  For example, there were differing accounts given as to exactly what occurred prior to the men going to Mr. Peaslee's property, what led the men to visit Mr. Peaslee's property that night, and even where each man was positioned when Mr. Peaslee first came upon them.[]  Mr. Peaslee testified that he saw feet belonging to the Defendant under the truck.  (H.T. p. 10.)  Yet both Mr. Hayman and the Defendant testified that was not the case and that the Defendant was standing behind the truck.  (H.T. p. 41)  There were also discrepancies as to who was drinking prior to the incident and who was not.  Mr. Peaslee said he did not visit the Haymans in the afternoon and he did not consume any alcohol.  (H.T. p.[]20)  While both Mr. Hayman and the Defendant testified that he had been at the residence and had consumed alcohol.  In fact, Mr. Hayman testified that Peaslee 'had a buzz on' when he arrived and that he continued drinking.  (H.T. p. 49)

Finally, the record reflects that Mr. Hayman was prepared to testify before the Grand Jury that the Defendant did not in fact stab Mr. Peaslee.  (H.T. p.45, 60)  As he stated, he was prepared to say that 'it was just a fight between Sonny (Mr. Peaslee) and Roger (the Defendant); it was nothing big.'  (H.T. p. 47)  However, the District Attorney's Office and Trooper Fiske intervened and persuaded him to revert back to the story they had gone over with him.  (H.T. p. 45-46)  Mr. Hayman admitted during his testimony that his decision to change his story was motivated by a desire to 'please' the DA and the police, with the hope that his cooperation would allow him to escape any future prosecution.  (H.T. p. 62)  It should be noted that Mr. Hayman was never charged with any offense stemming from his involvement in the disturbance at Mr. Peaslee's.  (H.T. P. 49)  Also, with regard to the Grand Jury matter, the State attempted to imply that the Defendant and his wife had in some way coerced and intimidated Mr. Hayman into denying that the stabbing had occurred.  (H.T. p. 45)  However, it was not Mr. Hayman but in fact the Defendant who suffered a beating (requiring 17 stitches) at the Hayman residence approximately two weeks after the Grand Jury met and Mr. Hayman gave his revised version of events implicating the Defendant.  (H.T. P. 122)

The several discrepancies and lack of credible testimony from the State's witnesses, in addition to the lack of proof concerning the existence of the alleged 'dangerous weapon' purportedly used by the Defendant renders the evidence too unreliable to provide the rational basis necessary for excluding reasonable doubt in this case.  In order to find the Defendant guilty beyond a reasonable doubt, the law demands a high degree of certitude; as the Court stated in <u>Estes</u>, what's required is the conscious belief that the charge is almost certainly true.  <u>Estes</u> at 1116.  As a result,

>the trial judge's decision finding the Defendant guilty was in error and based on insufficient evidence.

(Id. at 7-11.).

In the State's appellee brief to the Maine Law Court, the argument was short and simple: Penman faults the trial judge for not crediting the evidence that contradicted the prosecution's case but the trial judge, the trier of fact, expressly explained in returning his verdict that, while he recognized the contradictory evidence proffered by the defense, he was not crediting that evidence in that he found the prosecution's evidence more credible. Indeed, the trial court fully explained the rationale for its decision and the credibility determinations it had made. (Tr. Transcript at 170-72, State Ct. R). For instance, the trial judge noted that in accepting Peaslee's version of the stabbing which included testimony about the knife, he considered that Peaslee testified he was not drinking on the date in question and the physician's assistant's testimony corroborated that statement.

On its direct appeal review of this verdict, the Maine Law Court entered the following memorandum of decision:

>Roger E. Penman appeals from judgments of conviction for aggravated assault (Class B), 17-A. M.R.S.A. § 208(1)(B) (1983), and terrorizing (Class C), 17-A M.R.S.A. §§ 210, 1252(4) (1983 & Supp. 2004), entered in the Superior Court (Penobscot County, Mead, J.) following a jury-waived trial. Contrary to Penman's contentions, viewing the evidence in the light most favorable to the State, there is sufficient record evidence on which the court could have found beyond a reasonable doubt each element of both crimes. See State v. Sweeney, 2004 ME 123, ¶ 15, 861 A.2d 43, 46.

(Mem. Dec. at 1, Mem No. 05-88, May, 20, 2005.)

The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') provides that:

5

>   **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>>   **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>   **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>   **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d),(e).

With respect to § 2254(d)(1)[1], this court reviews the decision of the Law Court through the following prism:

>   The "contrary to" category "embraces cases in which a state court decision directly contravenes Supreme Court precedent." Mastracchio v. Vose, 274 F.3d 590, 597 (1st Cir.2001) (citation omitted). The "unreasonable

---

[1]    Of course, 28 U.S.C. § 2254(d)(2) allows a petitioner to challenge factual determinations made by the state court and Penman's sufficiency of the evidence claim could have been framed as such an attack in that Penman is claiming that the State courts' determinations were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. It may well be that 28 U.S.C. § 2254(d)(2) is the/an appropriate fulcrum for such a challenge as on, its face, a sufficiency of the evidence claim seems to be a prime candidate for subsection (d)(2).
>   The Tenth Circuit reflected in Hamilton v. Mullin:
>>   We have not yet settled whether a challenge to the sufficiency of the evidence on a habeas petition is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply. See Turrentine, 390 F.3d at 1197; Moore v. Gibson, 195 F.3d 1152, 1176-77 (10th Cir.1999); Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir.2003). Section 2254(d)(1) governs questions of law and requires us to determine whether the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal Law." Section 2254(d)(2), in contrast, applies to questions of fact and asks whether the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented." Despite the lack of clarity in this area, "we need not decide [the] question here because [the defendant] is not entitled to habeas relief under either standard." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir.2004).

436 F.3d 1181, 1194 (10th Cir. 2006). See also Bruce v. Terhune, 376 F.3d 950, 959-60 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1107 (9th Cir. 2005) (Wallace, Sen. Cir. J., dissenting). However, Hurtado v. Tucker, 245 F.3d 7 (1st Cir. 2001) makes no mention of 28 U.S.C. § 2254(d)(2) and I proceed on the assumption that § 2254(d)(1) is the appropriate post-AEDPA provision for the analysis of a sufficiency of evidence claim.

> application category" includes cases in which the state court's decisions, while not "contrary to" relevant Supreme Court precedent, nonetheless constitute an "unreasonable application" of that precedent. Id.
>
> The Supreme Court has said that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially undistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The "unreasonable application" analysis, however, affords relief only if "the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the petitioner's case." Id. at 413.
>
> A state court need not cite or be aware of Supreme Court precedents so long as "neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

Knight v. Spencer, 447 F.3d 6, 11 -12 (1st Cir. 2006) (emphasis added).[2]

The States cites to the pre-AEDPA Jackson v. Virginia, 443 U.S. 307 (1979) as the Supreme Court precedent setting forth the clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) for a due process claim of this ilk. Actually, Jackson is a case that declared that federal courts reviewing state court's sufficiency claims should apply the In re Winship, 397 U.S. 358 (1970) standard in the federal habeas proceeding.

---

2   The sequential organization of Knight v. Spencer, suggests that the failure to cite to the relevant Supreme Court precedent is not only not a hindrance to undertaking the "contrary to" analysis but would not prevent the federal court from proceeding with the 'unreasonable application' inquiry. It twists the mind to attempt to comprehend how, if the state court opinion does not cite or demonstrate an awareness of the United States Supreme Court precedents, this court can in any measurable, meaningful way identify how the decision was an unreasonable application of a precedent not applied. The Early discussion, on which the First Circuit draws in Knight, is pegged to the "contrary to" prong of the § 2254(d)(1) analysis.

With respect to this concern, the First Circuit observed in Hurtado v. Tucker:

> A total failure by the state court to discuss any constitutional claim may mean that there was no such claim "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d) (West Supp.2000); see Washington v. Schriver, 240 F.3d 101, 107 (2d Cir.2001). Here, however, the state appeals court adjudicated Hurtado's claims on their merits. We do not reach the question of how to analyze whether there has been an "unreasonable application of" clearly established federal law where there is no state court analysis of the claims.

245 F.3d 7, 18 n.18 (1st Cir. 2001).

It may be that if there is no state court analysis of a claim (and, needless to say, no citation to the relevant Supreme Court precedent) the unreasonable application prong goes by the wayside and all that is left for a federal court to measure is whether or not the state court determination is contrary to Supreme Court precedent following Early.

In re Winship "explicitly" held, "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364 (emphasis added). Jackson put to rest a more deferential federal habeas standard that required only that there be "any evidence to support a state-court conviction" 443 U.S. at 312-13. Whereas the state court reviewing a jury verdict would apply In re Winship, for this Court, in reviewing a state court In re Winship-moored sufficiency of the evidence determination, Jackson is a guide for federal courts which must follow its directive that "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324.[3]

### *Contrary to* In re Winship/Jackson?

In Hurtado v. Tucker the First Circuit addressed an insufficiency of the evidence claim vis-à-vis which a Magistrate Judge recommended to the District Judge that the Court grant relief on the grounds that the state court had unreasonably applied the In re Winship/Jackson standard. 245 F.3d 7, 13 (1st Cir. 2001). The District Judge reasoned that "the magistrate judge incorrectly decided the case under § 2254(d)(1)'s

---

3   Addressing a 28 U.S.C. § 2254 insufficiency of the evidence challenge the First Circuit in Hurtado v. Tucker explained:

> The Court's holding in Jackson represented an extension of its previous decision in In re Winship, 397 U.S. 358, 364(1970), that due process requires that a conviction be supported by proof beyond a reasonable doubt. The Jackson standard must be applied with specific reference to the elements of the offense as defined by state law. See Campbell v. Fair, 838 F.2d 1, 4 (1st Cir.1988).

245 F.3d 7, 12 n.8 (1st Cir. 2001).

The Jackson Court turned to the evidence in the case before it and rejected "the petitioner's claim that under the constitutional standard dictated by *Winship* his conviction of first-degree murder cannot stand." Jackson, 443 U.S. at 324; see also id. at 318 ("After Winship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must … to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").

In light of Hurtado's approach, in this opinion I refer to the precedents governing my review as In re Winship/Jackson.

8

'unreasonable application of' prong … [and] found the claim should have instead been decided under the statute's 'contrary to' prong." Id. at 14. The District Judge concluded that the petitioner was entitled to relief on this prong of the 28 U.S.C. § 2254(d)(1) inquiry. Id.

With respect to this latter 'contrary to' determination, the First Circuit disagreed with the District Judge. It explained:

> Here, the Appeals Court applied the correct standard by articulating the standard set forth in Jackson. Indeed, this case presents a good example of one to which § 2254(d)(1)'s "contrary to" prong does not apply: "a run-of-the-mill state-court decision applying the correct legal rule from [the Supreme Court's] cases to the facts of a prisoner's case." Williams, 529 U.S. at 406. Because this case is therefore not properly analyzed under the "contrary to" standard, we turn to "the second step of the requisite analysis: whether the state court decision constitutes an unreasonable application of clearly established Supreme Court case law." Williams v. Matesanz, 230 F.3d at 426.

Id. at 15.

In Penman's case, the Maine Law Court expressly referred to a sufficiency of the evidence standard[4] and its precedent, State v. Sweeney, 2004 ME 123, ¶ 15, 861 A.2d 43, 46, a case which fully undertakes this analysis based on the evidence at trial. In Penman's case the Maine Law Court may not have articulated the pros and cons of the prosecution's case but, with respect to the 'contrary to' prong of 28 U.S.C. § 2254(d)(1), Penman's, like Hurtado's, is "a run-of-the-mill state-court decision applying the correct

---

[4] In its motion to this court, the State makes no argument that the Maine Law Court was not adequately alerted to the Constitutional dimension of Penman's insufficiency claim by the mere references to the State's "beyond a reasonable doubt" burden of proof. See generally Goodrich v. Hall, 448 F.3d 45, 47-48 (1st Cir. 2006).

In Jackson, the United States Supreme Court explained: "Under the Winship decision, it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." 443 U.S. at 321; see also id. at 322 n.15.

In short, this case does not raise a concern about which holding of the United States Supreme Court the state court should have applied given the nature of the claim. Compare, Carey v. Musladin, __ U.S. __, 127 S. Ct. 649 (Dec. 11, 2006).

legal rule from [the Supreme Court's] cases to the facts of a prisoner's case." Williams, 529 U.S. at 406.[5]

### *Unreasonable Application of* **In re Winship/Jackson**?

It is evident from a review of the entire trial transcript that a rational fact-finder in Penman's trial could have concluded that the State had proven beyond a reasonable doubt that Penman's assault on Peaslee involved a knife. Jackson, 443 U.S. at 318 ("After Winship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must … to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").

Hurtado offers the following assistance to lower courts undertaking the unreasonable application inquiry[6] vis-à-vis an insufficiency-of-the-evidence claim:

> Williams [v. Talyor, 529 U.S. 362 (2000)] and our own precedent … suggest the following guidelines as to some, but not all, of the principles in an insufficiency-of-the-evidence case to be used in making the evaluation of "objective unreasonableness" under § 2254(d)(1):
> (1) The focus of the inquiry is on the state court decision;

---

5  I rely on Hurtado here in terms of the adjudication of this claim through the 28 U.S.C. § 2254(d)(1) prism and not as a source of clearly established Supreme Court law under that subsection. See Carey v. Musladin, __ U.S. __, __, 127 S. Ct. 649, * 652-54 (Dec. 11, 2006).

6  I jump directly to the unreasonable application analysis. In Hurtado, the First Circuit, preliminary to its discussion of the unreasonable application analysis of a 28 U.S.C. § 2254 insufficiency of the evidence challenge, indicated:
> Habeas review involves the layering of two standards. The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted. Here, that constitutional right is governed by Jackson's test of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). In a particular habeas case, it may be useful, although not mandatory, to review first the underlying constitutional issue, here the [In re Winship/]Jackson] question.

245 F.3d at 16.  In a footnote to this passage, the First Circuit reflected: "As one commentator has noted, "it is doubtful that state judges really prefer that federal courts spend their time asking not whether state court judgments are wrong, but whether they are unreasonably wrong." Id. at 16 n.15 (quoting Larry W. Yackle, The Figure in the Carpet, 78 Tex. L. Rev. 1731, 1756 (2000)).

10

    (2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;

    (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

    (4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and

    (5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

245 F.3d at 18.

In the spirit of the second Hurtado guideline, I have undertaken a full review of the transcript of the August 30, 2004, 9:20 a.m. to 2:45 p.m., seven-witness and six-exhibit trial and sentencing proceeding before the state trial judge. The "totality of the evidence" (Hurtado's second guideline) supports the Maine Law Court's affirmance of the trial court's beyond-a-reasonable-doubt determination regarding the aggravated assault. The witnesses included the Maine State Trooper who responded to the victim's call on the night of the assault (Tr. Transcript at 71-103), a physician's assistant who treated the victim's wound hours after the assault (id. at 63-71), and the somewhat convoluted, sometime contradictory testimony of a cadre of overlapping acquaintances/friends/current partners/ex-partners - including the victim and the defendant - who at different points shared different residences on a multi-unit family compound in Burlington, Maine and all of whom either admitted to or were described as consuming considerable alcohol - beer, tequila, and coffee brandy - on the afternoon and evening of the assault (id. at 2-27, 28-62, 103-08, 109-31, 131-43, 149-59). Furthermore, Hayman as the only eyewitness testified that, although he never saw the knife, he saw Penman approaching Peaslee from behind, come around Peaslee's side with something in his hand, and contact Peaslee on

11

the side. (Id. at 42-43, 53-56.) Hayman also testified that after they fled to the truck and were driving away Penman told him that he had "got" Peaslee. (Id. at 54.) There was uncontradicted testimony from the physician's assistant who treated Peaslee shortly after the altercation with Penman that there was a one and one half inch laceration extending laterally along the ribs on Peaslee's left flank requiring four sutures that could have been caused by a knife or another, straight, metal object (id. at 66-68) that "occurred with some force and which was inconsistent with someone brushing up against something sharp." (id. at 69-79). This is just to list some of the evidence favoring the State's theory.

Focusing on the Maine Law Court's sufficiency-of-the-evidence decision (Hurtado's first guideline) in its review of the trial judge's determination, the Maine Law Court had before it this transcript which reveals that in his summation defense counsel set forth many of the evidentiary contradictions and witness credibility concerns highlighted here by Penman. (Tr. Transcript at 166-69; State Ct. R. A.) These counterpoints were rearticulated in Penman's brief to the Law Court. (Br. Appellant at 6-7, State Ct. R. B.) With respect to whether the Law Court considered all of Penman's key arguments (Hurtado's third guideline), it is unfortunate that the Maine Law Court did not set forth at least a summary of the arguments that Penman made which it considered in reaching its conclusion that there was sufficient evidence; however, the First Circuit cautioned in Hurtado that "the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable." 245 F.3d at 18.

As to the failure of a state court to give appropriate weight to all of the evidence (Hurtado's fourth guideline) Penman insists that there was not concrete evidence tendered that placed a knife at the scene of the assault or that Penman even owned a knife and he

12

presses his theory that Peaslee was actually cut on sheet metal in the back of Penman's truck.  Addressing a comparable alternate hypothesis in Jackson, the United States Supreme Court explained:

> The petitioner's …. claim of self-defense would have required the trial judge to draw a series of improbable inferences from the basic facts ….
> Only under a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. That theory the Court has rejected in the past. Holland v. United States, 348 U.S. 121, 140 [(1954)]. We decline to adopt it today. Under the standard established in this opinion as necessary to preserve the due process protection recognized in Winship, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

443 U.S. at 325-26.  In this case it does appear affirmatively on the record that the trier of fact expressly resolved the conflicts in favor of the prosecution, having found "a deficit in the credibility of the testimony tendered by the defense."  This articulation by the trial judge of his verdict was before the Maine Law Court when it decided Penman's direct appeal.[7]  As to Penman's other weight-of-the-evidence complaints, relying on the precedents at hand, it is clear that this court must not, in the context of a 28 U.S.C. § 2254 sufficiency-of-the-evidence review, nit-pick the evidence for weaknesses in the State's proof to identify how a fact-finder might have concluded otherwise. As the Seventh

---

7   Because of the summary nature of the Law Court's opinion, the trial judge's articulation of the reasons he concluded that the State had proven Penman's guilt on the aggravated assault charge beyond a reasonable doubt is helpful.  That said, the Jackson Court – also a bench trial - explained:
> The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the standard announced today does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder-if known. See generally 3 F. Wharton, Criminal Procedure § 520 (12th ed. 1975 and Supp.1978).

443 U.S. at 319 n.13 (emphasis added).

13

Circuit explained in denying relief on a similar post-AEDPA sufficiency-of-the-evidence argument:

> [G]iven our deferential standard of review, which requires us to consider not whether the state courts were incorrect but whether they were unreasonable, we cannot allow [the § 2254 petitioner] to peel the onion in this fashion. Always to be borne in mind is that a number of weak proofs can add up to a strong proof. [The petitioner] misses the point in mounting separate attacks against each of the three witnesses without considering that the whole might be greater than the sum of the parts.

Trejo v. Hulick, 380 F.3d 1031, 1032 (7th Cir. 2004) (internal citations and quotations omitted). The In re Winship "inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson, 443 U.S. at 318-19 (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)) (emphasis added). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)).[8]

Based on the above, I conclude that the Maine Law Court's "reasonable doubt" determination is not an unreasonable application of In re Winship under Jackson.

*Procedural Default of Remaining Three Claims*

The State takes the position that Penman's first three grounds are procedurally defaulted. It describes these three claims as essentially the same three claims Penman raised in his motion for reconsideration to the Maine Law Court apropos the denial of his direct appeal and his pro se state petition for post-conviction review. In the State's view this does not meet the requirement of 28 U.S.C. § 2254(b)(1)(A) – requiring that a § 2254

---

8   With regards to Hurtado's fifth guideline, Penman has not attempted to evidence the absence of cases of conviction precisely parallel on their facts.

petitioner to exhaust "the remedies available in the courts of the State" prior to applying for federal habeas relief-- because Penman did not raise the ground in his appeal brief to the Maine Law Court.  It preemptively attacks the notion that Penman's efforts to have the Law Court address them was sufficient under Maine Law to comply with the § 2254(b)(1)(A) exhaustion requirement.  With respect to Penman's effort to pursue state relief on these claims in the post-conviction venue, the State notes that the grounds were dismissed by the pre-hearing post-conviction order because they could have been raised on direct appeal.  Finally, the State observes that, while Penman did file a motion for reconsideration with the post-conviction court regarding the dismissal of these three grounds, he did not seek the discretionary review of the Maine Law Court in the aftermath of his unsuccessful efforts to revive these three grounds in the post-conviction court.

With respect to this exhaustion requirement, the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the " ' "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.' " Duncan v. Henry, 513 U.S. 364, 365 *(*per curiam*)* (quoting Picard v. Connor, 404 U.S. 270, 275 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in <u>each appropriate state court (including a state supreme court with powers of discretionary review</u>), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added).

Penman argues that he gave the Maine Courts an opportunity to review these claims because they were contained in some of his state-court pleadings. However, Penman's argument is not measurably distinguishable from the argument of the petitioner

15

in Reese, an argument that was soundly rejected by the United States Supreme Court. 541 U.S. at 29-34. See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

With regard to the State's argument that Penman cannot demonstrate cause and prejudice for his procedural default, Penman responds by reciting the perceived merits of his 28 U.S.C. § 2254 grounds (Opp'n Mot. Dismiss at 4-5); highlighting the fact that he has less than seven months remaining in his original sentence and would not have enough time to further exhaust (his now unavailable) state remedies (id. at 5); insisting that all his claims have been adjudicated by one state court or another; suggesting that res judicata of the Superior Court's order prevented him from pressing the grounds in front of the Maine Law Court (id.); and complaining about the procedural treatment of his pleadings by the state courts and the State's faulting of him for making assumptions about the proper way to proceed in the state courts (id. at 6-8). Penman does not assert that he actually, factually took steps to fully exhaust his state remedies by seeking the Maine Law Court's review of the denial of his post-conviction grounds.[9] The State is entitled to stand on its argument that Penman has not satisfied the presentation requirements of 28 U.S.C. § 2254(b)(1)(A) and Reese.

## *Conclusion*

Accordingly, I recommend that the Court **GRANT** the motion to dismiss (Docket No. 4) and deny Penman 28 U.S.C. § 2254 relief.

## NOTICE

A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions
entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by

---

9  And, as the State notes, even if that step were not necessary, the Superior Court's dismissal of the three grounds in his pre-hearing order appears to provide a basis for an independent and adequate state law ground dismissal in this court. See Dretke v. Haley, 541 U.S. 386, 392-93(2004).

16

the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 18, 2007.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge